ABRAHAM, et al.

v.

EXXON CORPORATION, et al.

Civ. A. No. 93–3821.

United States District Court, E.D. Louisiana.

June 26, 1995.

---

Philip Bohrer, Koederitz & Bohrer, Baton Rouge, LA, Michael Thomas Tusa, Jr., Michael T. Tusa, Jr., Attorney at Law, David Earl Walker, David E. Walker, Attorney at Law, Metairie, LA, for plaintiffs N. Mark Abraham, Richard E. Ellis, William O. Flowers, Robert Giurintano, and Billy J. Walker.

Howard Shapiro, McCalla, Thompson, Pyburn, Hymowitz & Shapiro, New Orleans, LA, Douglas B. Neagli, Douglas B. Neagli, Attorney at Law, Houston, TX, for defendants Benefit Plan of Exxon Corp. and Participating Affiliates, Exxon Corp., on behalf of its unincorporated div., Exxon U.S.A.

PORTEOUS, District Judge.

Before the Court are Exxon Corporation's ("Exxon") Motion for Summary Judgment and Motion to Consider Merits of Individual Claims Prior to Class Certification. These motions came before the Court for argument on November 30, 1994, and for reargument on limited issues on June 14, 1995. For the reasons set forth below, the Court grants Exxon's Motion for Summary Judgment.[1]

**Background**

The plaintiffs filed this class action complaint[2] against Exxon pursuant to the Em-

---

1. The parties agreed to defer the resolution of the Motion to Consider Merits of Individual Claims Prior to Class Certification until after the Court's ruling on the Motion for Summary Judgment. This Minute Entry granting Exxon's Motion for Summary Judgment renders the Motion to Con-

sider Merits of Individual Claims Prior to Class Certification moot.

2. The complaint was filed as a class action, however the issue of class certification was never before the Court.

ployee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., seeking benefits, declaratory relief, and statutory penalties based on their exclusion from the Benefit Plan of Exxon Corporation and Participating Affiliates ("Plan"). The plaintiffs originally filed claims with the Plan, which were denied. The five named plaintiffs are alleged to be representatives of a class of similarly situated individuals who were called "contract employees" or "special agreement persons", who currently or formerly performed technical assistance, design, research and/or drafting work for Exxon engineering departments at Exxon facilities in the United States for various lengths of time. Defendants are Exxon Corporation, Exxon USA, and the Benefit Plan of Exxon Corporation and Affiliates.

In summary, Exxon argues that plaintiffs are not[3] and were never Exxon employees, but instead contract workers who are/were employed by other companies.[4] Exxon argues that it made a business decision to exclude this category of persons from its Plan, and that under ERISA, Exxon was within its rights to so structure its Plan. Plaintiffs argue that the only actual differences between themselves and Exxon employees are that plaintiffs are not paid by Exxon, and that plaintiffs are excluded from Exxon's Plan. Plaintiffs argue generally that for all other purposes, Exxon exercises control over their employment, and that Exxon cannot arbitrarily exclude them for the Plan to save money. Exxon does not deny that cost was a motivating factor in its decision to exclude contract employees from its Plan.

**The Plan Administrator's Decision to Deny Benefits Was Not an Abuse of Discretion.**

The Plan is an employee benefit plan as defined by ERISA, 29 U.S.C. § 1002(3), paying benefits to participants under several programs. The Plan defines "qualifying employees" who are eligible for benefits, and specifically excludes "leased employees"[5] and "special agreement persons".[6] According to Exxon, the Plan considered and affirmatively decided not to cover those categories of employees, due to costs involved and for other reasons. As the Plan sponsor, Exxon has complete control over the design of the Plan. *McGann v. H & H Music Co.*, 946 F.2d 401 (5th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992).

Plaintiffs sought and were denied benefits by the plan administrator, Mr. James J. Rouse. Plaintiffs argue that no deference should be given to the decisions of Mr. Rouse because he did not comply with ERISA for several reasons including failing to advise plaintiffs of appeal rights, and failing to provide written notice to plaintiffs setting forth reasons for denial.

The Plan grants the administrator "discretionary and final authority to determine eligibility ... [and] to interpret this ... Plan." General Provisions, Section 3.2(A)(1)(i). In that case, the administrator's decision may be reviewed only for "abuse of discretion." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). A court must uphold an administrator's decision under the abuse of discretion standard if it is "legally correct." *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631 (5th Cir.), *modified, reh'g denied*, 979 F.2d 1013 (1992). *Wildbur* sets forth three factors for a court to consider in determining whether the interpretation of a plan is legally correct: (1) did the administrator give the plan uniform construction, (2) is the interpretation consistent with a fair reading of the plan, and (3) will unanticipated costs result from different interpretations of the plan. *Id.* at 638. The affidavit of James J. Rouse,

---

**3.** The Court notes that plaintiff Robert Giurintano has been classified as a participant by Exxon for his years worked as an Exxon employee. This has no bearing on his claim in this action. Mr. Giurintano has no claim for benefits for the time that he worked as a contract employee or special agreement person.

**4.** For purposes of the Motion for Summary Judgment only, Exxon assumes that plaintiffs are "common law employees".

**5.** Leased employees were retroactively excluded in 1987.

**6.** Special agreement persons have been excluded since 1978.

attached to Exxon's Motion for Summary Judgment, satisfies the Court that Mr. Rouse's decision was legally correct, not arbitrary or capricious, and not an abuse of discretion. Paragraph 15 of Mr. Rouse's affidavit shows that the administrator has given the plan uniform construction by establishing that the Plan has never paid benefits to any person satisfying the definition of either Special Agreement Persons or Leased Employees as those terms are defined in the Plan. A review of Mr. Rouse's affidavits and the evidence before the Court convinces the Court that the denials of plaintiffs' claims were nothing more than a fair reading of the Plan, and that substantial unanticipated costs would result to Exxon if the Plan were interpreted in a contrary manner.

**The Court is Unpersuaded by Plaintiffs' "Structural Defect" Argument.**

■ Plaintiffs argue that a "disproportionate" number of Exxon common-law employees have been excluded from the Plan, thus ERISA has been violated. Plaintiffs point to 29 U.S.C. § 1104, which provides that:

> ... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries....

Plaintiffs argue that while the facts of this case would give rise to a violation of the Taft–Hartley Act, the facts also result in a violation of ERISA. To reach this conclusion plaintiffs argue that section 302(c)(5) of the Taft–Hartley Act provides that monies paid by an employer to a trust fund established in collective bargaining shall only be used for the "sole and exclusive benefit of the employees...." This language has been interpreted by the courts as forbidding arbitrary and unreasonable exclusions of large numbers of participants. Plaintiffs assert that section 404 of ERISA provides comparable language, specifically, that as to each pension plan, the fiduciary shall discharge his duties for the exclusive purpose of providing benefits to the participants in the plan. According to plaintiffs, because the statutory language of ERISA is similar to that found in the Taft–Hartley Act, guidance can be drawn from interpretations of Taft–Hartley. Plaintiffs cite to several Ninth Circuit cases to build support for their argument.[7]

Acceptance of plaintiffs' analysis requires certain basic assumptions, for instance, that the exclusion of the Exxon common-law employees was arbitrary and capricious. It would also require the Court to cross the "bridge" that plaintiffs attempt to build between Taft–Hartley and ERISA, and to follow the reasoning of *Renda v. Adam Meldrum & Anderson Co.*, 806 F.Supp. 1071 (W.D.N.Y.1992). The Court finds plaintiffs' arguments too tenuous to accept.[8] The

---

**7.** Plaintiffs argue that under *Local 144 Nursing Home Pension Fund v. Demisay*, — U.S. —, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993), Justice Scalia extended the "sole and exclusive" language of the Taft–Hartley Act to ERISA. Plaintiffs cite *Burroughs v. Bd. of Trustees of Pension Trust*, 542 F.2d 1128, 1131 (9th Cir.1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977), for its holding that under Taft–Hartley, a structural defect is present when a pension plan excludes a sizeable number of union members with no reasonable purpose, failing to satisfy the "sole and exclusive" benefit requirement. Seven years later, the Ninth Circuit noted that Taft–Hartley provisions parallel ERISA provisions. *Hurn v. Retirement Fund Trust of Plumbing, Heating and Piping Industry of Southern California*, 703 F.2d 386, 391 (9th Cir.1983). Next, plaintiffs point to *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301 (9th Cir.1983), where the Court addressed a structural defect argument under ERISA, noting that if a disproportionate number of employees are ex-

cluded from benefits, the burden shifts to the trustees to show a reasonable purpose for the exclusion. Finally, plaintiffs cite *Shishido v. SIU–Pacific District–PMA Pension Plan*, 587 F.Supp. 112 (N.D.Cal.1983), where the court explained that under both ERISA and the LMRA, court review of discretionary pension plan eligibility requirements is guided by the strict fiduciary standards imposed on trustees to ensure that they establish and administer trust funds for the sole and exclusive benefit of the employees. Further, the exclusion of employees from pension benefits without justification creates a presumption that the pension plan is structurally defective.

**8.** The exclusion of contract employees and special agreement persons was not arbitrary and capricious. Exxon has advanced legitimate reasons for their exclusion from the Plan, and as the Court has noted, Exxon, as Plan sponsor, has control over the design of the Plan. While similarities exist between the Taft–Hartley Act and

Court is unpersuaded by plaintiffs' compilation of Ninth Circuit holdings linking cases interpreting the Taft–Hartley Act to ERISA cases. Furthermore, the Court disagrees with the *Renda* court's analysis and rejects its holding.

**Plaintiffs Do Not State a Colorable Claim.**

The Court's rejection of plaintiffs' structural defect theory as a basis for stating a claim leads to the conclusion that plaintiffs fail to state a "colorable claim" for relief. Plaintiffs point to section 1002(7) of ERISA which defines "participant" as "any employee or former employee ... who is or may become eligible to receive benefits ...", and argue that they fit the definition of participant entitled to raise an ERISA claim. The Court does not agree that the language "may become eligible" extends to plaintiffs in this case. First and foremost, contract employees and special agreement persons are specifically excluded from participation in Exxon's Plan by the clear language of the Plan. Exxon, as sponsor, has control over the design of its Plan. Additionally, the Court has found that the Plan administrator's denial of benefits to plaintiffs was legally correct and not an abuse of discretion. Section 502(a)(1) of ERISA provides that a civil action may be brought by a participant or beneficiary. Plaintiffs are neither. Accordingly, under no scenario do plaintiffs have a colorable claim for benefits.

**Conclusion**

■ Under Fed.R.Civ.P. 56(c), summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the lawsuit under governing law. *Id.* For the reasons set forth above, the Court concludes that no material facts exist in this case that will affect the

outcome of this suit under the law.[9] Accordingly,

Defendants' Motion for Summary Judgment is **granted.**

---

ERISA, the Court does not believe that application of the concept of structural defect to ERISA is appropriate. The Court finds that *Renda* was a fact-intensive decision with no application to this case. The Court disagrees with the *Renda* court's bootstrapping of Internal Revenue Code regulations to reach its conclusions.

9. Plaintiffs have raised additional arguments in their memoranda urging the Court to deny defendants' motion. While the Court has not discussed each of those arguments in this Minute Entry, all arguments have been considered by the Court.